IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN MICHELLE PECK,                    Case No. 3:13-cv-02278-AA
                                             OPINION AND ORDER
          Plaintiff,

     v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

          Defendant.

———————————————————

Nancy J. Meserow
Law Office of Nancy J. Meserow
7540 S.W. 51st Avenue
Portland, Oregon 97219
     Attorney for plaintiff

S. Amanda Marshall
Adrian L. Brown
Ronald K. Silver
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Lars J. Nelson
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
     Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Karen Peck brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## PROCEDURAL BACKGROUND

On May 6, 2010, plaintiff applied for SSI and DIB. Tr. 160-72. Her applications were denied initially and upon reconsideration. Tr. 99-108, 111-17. On July 18, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-47. On August 3, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 13-23. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## STATEMENT OF FACTS

Born on November 22, 1976, plaintiff was 31 years old on the alleged onset date of disability and 35 years old at the time of the hearing. Tr. 33, 162, 169. Plaintiff graduated from high school. Tr. 33, 198. She worked previously as a cashier, deli worker, customer service representative, and photo lab operator. Tr. 43-44, 199. Plaintiff alleges disability as of April 30, 2008,

due to anxiety, post-traumatic stress disorder ("PTSD"), and fibromyalgia. Tr. 162, 169, 197.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920.

First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff's anxiety and affective disorders were severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff possessed the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels" but "she should avoid concentrated exposure to noise" and "is limited to performing unskilled work and routine tasks that require no interaction with the public and only superficial interaction with co-workers but no close cooperation or coordination." Tr. 17.

At step four, the ALJ determined plaintiff could perform her past relevant work as a photo lab operator. Tr. 21. Alternatively, at step five, the ALJ found that plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, such as industrial cleaner and motel cleaner. Tr. 22. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 23.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not

Page 5 - OPINION AND ORDER

fully credible; (2) neglecting to include her fibromyalgia, psychotic disorder, and disc disease as medically determinable, severe impairments at step two; (3) rejecting medical evidence furnished by nurse practitioner David Theon and licenced counselor Erin Menczer, as well as John Adler, Ph.D., and Brian Frank, M.D.; (4) failing to account for all of her impairments in the RFC; and (5) relying on invalid VE testimony at steps four and five.

I.   Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom testimony concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's

Page 6 - OPINION AND ORDER

credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she is primarily unable to work due to "anxiety and the PTSD, and like hallucinations and that stuff." Tr. 35. She also testified to being paranoid "[a]ll the time" and obsessive compulsive about "germs and bugs," such that she did not like to leave to house or "touch anything that other people touch." Tr. 39. In addition, plaintiff endorsed physical problems with "fibromyalgia and the IBS." Tr. 35. Plaintiff stated she was capable of dressing and driving herself, but that her mother had to help her in and out of the bathtub. Tr. 36. She reported engaging in limited household chores, such as cooking, laundry, and occasional grocery shopping, and independently taking care of her two youngest children; her parents took care of her oldest, disabled son because she could not "lift him in and out of the tub" or attend his various "school functions[,] conferences and things." Tr. 36-38. When asked what she does on a typical day, plaintiff responded that she wakes up, stretches, gets out of bed, gets her son on the bus, feeds the baby, and "not much other than that." Tr. 37.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible due to her inconsistent statements, activities of daily

Page 7 - OPINION AND ORDER

living, and history of improvement with treatment. Tr. 18-19.

Notably, the ALJ found that plaintiff had "been inconsistent in her reports of when her last job ended." Tr. 18. Discrepancies in a claimant's testimony can serve as the basis for a negative credibility finding. Burch, 400 F3.d at 680-81. Substantial evidence supports the ALJ's conclusion in the case at bar. In applying for benefits, plaintiff informed the Social Security Administration that she stopped working "[b]ecause of [her] conditions." Tr. 197. Yet plaintiff reported to a medical provider in July 2010 that she "quit [her deli job] after being denie[d] time off for a sick child." Tr. 352; see also Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ may draw an adverse credibility inference where the claimant stops working for reasons unrelated to his or her alleged disability). One month later she remarked to another provider that she "quit" working "at a deli . . . due to 'being tired of it,' but also was robbed and had trouble coping with the stress." Tr. 376. As the ALJ reasonably concluded, these conflicting statements undermine plaintiff's credibility.

In addition, the ALJ rejected plaintiff's subjective symptom testimony in light of her activities of daily living. Tr. 18. Daily activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted). As the ALJ noted, plaintiff "is able to take care of her three children." Tr. 18. While there is some evidence in the record indicating that

Page 8 - OPINION AND ORDER

plaintiff's parents are the primary care-givers for her disabled son, the fact remains that she independently provides for the needs of her other two young children. Tr. 36-38, 223, 353, 376-77, 497, 526, 530, 580. In direct contravention of her hearing testimony, the record demonstrates that plaintiff left the house to gamble "as much as possible"; she also engaged in romantic relationships.[1] See, e.g., Tr. 41-42, 347-48, 477, 494, 497-98, 524-26, 580; see also Tr. 522 ("[plaintiff] believes that gambling is an opportunity to leave the house"), 533 (plaintiff reporting that she "uses [gambling] to relieve anxiety and to leave the house"). Further, plaintiff repeatedly told her medical providers that she cleans compulsively. Tr. 342, 377, 496, 502, 523. She regularly attended her or her children's medical appointments and, although less frequently, traveled out of town, went to her children's school or after-school activities, ate out, and socialized. Tr. 207, 342-43, 364, 475, 478, 481, 491, 494, 513-14, 516, 522, 536, 541, 580, 584, 587.

Moreover, as the ALJ determined, despite the fact that her symptoms improved with treatment, plaintiff was not consistently compliant with her doctors' recommendations. Tr. 18. A claimant may

---

[1] Plaintiff devotes a large portion of her opening brief to arguing that the ALJ's reliance on her "gambling addiction" was misplaced. See, e.g., Pl.'s Opening Br. 20-22. As the Commissioner observes, however, "gambling addiction has not been diagnosed by an acceptable medical source [and, in any event, plaintiff] was able to avoid gambling when she wanted to save money." Def.'s Resp. Br. 11 (citing Tr. 477). Regardless, the ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability. Febach v. Colvin, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004)).

be discredited "if the medical reports or records show that the [she] is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7P, <u>available at</u> 1996 WL 374186; <u>see also</u> <u>Warre v. Comm'r Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be adequately controlled with medication or treatment are not disabling). Here, despite alleging disability as of April 2008 based predominantly on her psychological impairments, plaintiff did not seek regular mental health treatment until June 2010. Tr. 345-54, 361-71, 471-555; <u>see also</u> Tr. 335-38, 340-44, 355-60 (plaintiff first initiated mental health counseling in October 2009 but "had to stop therapy" later that month because "she and her son had many medical problems"). On multiple occasions, she was non-compliant with treatment and, in more than one instance, she admitted to lying to her medical providers or others. <u>See, e.g.</u>, Tr. 352, 471-73, 476, 500, 522, 532-33, 568. When she regularly took her medications as prescribed, plaintiff reported improvement. Tr. 479; <u>see also</u> Tr. 492 (plaintiff's counselor opining that "taking med[ications] consistently would be helpful"), 495 (plaintiff's counselor reporting that she was "stuck" due to "poor medication compliance"). Finally, records submitted to the Appeals Council after the ALJ's decision evinced an overall lessening of psychological symptoms, such that plaintiff was "considering trying to attend college." Tr. 567-93.

    Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective

symptom statements. The ALJ's credibility finding is affirmed.

II.  Step Two Finding

Plaintiff also contends that the ALJ erred at step two by neglecting to include fibromyalgia, psychotic disorder, and disc disease as medically determinable, severe impairments. At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it has "more than a minimal effect on the ability to do basic work activities." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citation and internal quotations omitted). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence, such as "signs, symptoms, and laboratory findings"; "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4p, available at 1996 WL 374187; 20 C.F.R. §§ 404.1513(a), 416.913(a).

A.  Fibromyalgia

Fibromyalgia qualifies as a medically determinable impairment "if the physician diagnosed [fibromyalgia] and provides the evidence [described] in section II(A) or section II(B), [which are] generally base[d] on the 1990 American College of Rheumatology (ACR) Criteria." SSR 12-29, available at 2012 WL 3104869. Sections II(A)and II(B) both mandate, in relevant part, "[a] history of widespread pain [that has lasted for a minimum] of 3 months [and] [e]vidence that other disorders that could cause the symptoms or

signs were excluded." Id. In addition, section II(A) requires, in terms of signs and symptoms, "[a]t least 11 positive tender points on physical examination[,]" whereas section II(B) necessitates "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions." Id.

The medical record before the Court contains multiple references to fibromyalgia. See, e.g., Tr. 345, 352, 376-78, 385, 429, 433, 497, 523, 555, 562. Yet, as the Commissioner observes, no medical source, acceptable or otherwise, performed testing consistent with SSR 12-29 or the ACR criteria. In fact, all of the evidence relating to this impairment merely reflects plaintiff's self-reports. Id. Dr. Frank, the only acceptable medical treating source to acknowledge this condition, expressly stated that his opinion was based on plaintiff's subjective statements. Tr. 565; see also Tr. 393-418, 435-70 (chart notes from Cheryl Tidball, D.O., plaintiff's treating doctor from September 2009 through April 2012, which are silent in regard to this alleged condition), 376-78 (examining Dr. Adler, who performed a "Psychodiagnostic Evaluation" and was the only other acceptable medical source to list fibromyalgia as a diagnosis, reporting that his opinion regarding the existence of this condition was based on plaintiff's self-reports). In other words, Dr. Frank's purported diagnosis is not accompanied by reference to any clinical findings or examinations. Tr. 562-65; see also SSR 12-29, available at 2012 WL 3104869 ("[t]he evidence [establishing fibromyalgia as a medically determinable impairment] must document that the physician reviewed

the person's medical history and conducted a physical exam"). The ALJ did not err in concluding that fibromyalgia was not a medically determinable, severe impairment at step two.

B.   Psychotic Disorder

The only evidence in the record of a possible psychotic disorder is from Ms. Menczer or Mr. Theon. Tr. 496, 556. 579. Because Ms. Menczer and Mr. Theon are not acceptable medical sources, and there is no evidence in the record that they were working under the supervision of a licensed physician, this evidence is inadequate to establish the existence of an impairment at step two. See Belknap v. Astrue, 364 Fed.Appx. 353, 355 (9th Cir. 2010) (ALJ did not err by omitting, at step two, conditions that were diagnosed exclusively by non-acceptable medical sources) (citations omitted). The ALJ properly concluded that plaintiff's psychotic disorder was not a medically determinable, severe impairment at step two.[2]

---

[2] Alternatively, plaintiff asserts for the first time in her reply brief that the ALJ erred by failing to develop the record more fully in regard to her psychotic disorder and fibromyalgia. See Pl.'s Reply Br. 4-6; see also Cantrell v. Astrue, 2011 WL 1897910, *2 (D.Or. May 17, 2011) ("[t]he district court need not consider arguments raised for the first time in a reply brief") (citation and internal quotations omitted). The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F. 3d 453, 459-60 (9th Cir. 2001) (citation omitted). Neither the ALJ nor any medical source found the record in this case to be ambiguous or insufficient for proper evaluation. Plaintiff simply failed to introduce any acceptable medical evidence regarding these impairments. The ALJ's duty to more fully develop the record was not triggered.

Page 13 - OPINION AND ORDER

C.    Disc Disease

In March 2012, plaintiff underwent an MRI, which revealed "L5-S1 disk . . . . protrusion or annulus bulge" and "[m]ild degenerative disc disease." Tr. 437, 466-67. The ALJ found that plaintiff's back impairment was not medically determinable because it did not meet the twelve month durational requirement. Tr. 20. The ALJ therefore did not consider this condition at subsequent steps of the sequential evaluation and, as a result, did not include an exertional limitations in the RFC. Tr. 17.

An independent review of the record demonstrates that plaintiff began consistently reporting lower back pain and radiating leg numbness/weakness in January 2012.[3] Tr. 428-39, 443-44. Dr. Frank opined, in July 2012, that plaintiff suffered from "L5-S1 nerve root compression," which resulted in "back pain" and "leg pain." Tr. 562-64. Plaintiff's hearing testimony, also from July 2012, confirmed the persistence of symptoms that could be associated with or attributable to her back condition. Tr. 35, 38, 40. More importantly, an impairment that is degenerative, "by definition, progressively worsens over time." O'Brien v. Comm'r of Soc. Sec. Admin., 2014 WL 6432830, *9 (D.Or. Nov. 13, 2014) (citation and internal quotations omitted). Thus, at the time of the ALJ's August 2012 decision, plaintiff's back impairment had

---

[3] As the Commissioner correctly denotes, plaintiff "scours the record for evidence to establish a back impairment [that existed since May 2010]" but this evidence is either "irrelevant [or] actually identif[ies] a different etiology for the complaints," such as pregnancy or neck strain. Def.'s Resp. Br. 7 (citations omitted); see also Pl.'s Opening Br. 7-8.

existed for at least eight months and was likely to last continuously. See Case v. Astrue, 425 Fed.Appx. 565, 566 (9th Cir. 2011) ("[t]he ALJ must consider impairments even if they were diagnosed after the alleged date of disability onset") (citing Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)). While the decision to omit this impairment at step two may have been harmless, as discussed in greater detail in section IV(C), the ALJ committed reversible error in formulating a RFC that did not include exertional limitations accommodating for this condition, especially in conjunction with plaintiff's obesity.

III. Medical Evidence

Plaintiff argues that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting the assessments of Ms. Menczer, Mr. Theon, Dr. Adler, and Dr. Frank.[4]

A.    Non-Acceptable Medical Sources

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. §§

---

[4] To the extent plaintiff asserts that the global assessment of functioning ("GAF") scores assigned by Ms. Menczer and Mr. Theon alone establish her entitlement to benefits, her argument is unavailing. "The GAF scale is a tool for reporting the clinician's judgment of the individual's overall level of functioning [such that] a GAF score reflects a snapshot of a claimant's presentation on the day of the examination." Davis v. Astrue, 2012 WL 4005553, *9 (D.Or. June 12), adopted by 2012 WL 3614310 (D.Or. Aug. 21, 2012) (citation and internal quotations omitted).

404.1513, 416.913. "Other sources" include, but are not limited to, counselors. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of an other, or lay source, the ALJ need only provide a reason that is "arguably germane" to that witness. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).

      i.  Mr. Theon's Opinion

The record before the Court contains one evaluation from Mr. Theon, dated July 2011.[5] Tr. 523-26. This evaluation was based on an interview with plaintiff, clinical observations, a mental status exam, and Ms. Menczer's counseling notes. Id. Regarding her physical functioning, plaintiff "endorse[d]" having a baby "3 months ago" and suffering from fibromyalgia; she also stated that "finances are her biggest problem" because she was "[n]ot working currently [due to] fibromyalgia." Tr. 524-25. Mr. Theon observed plaintiff to be "[c]alm and cooperative, dressed age-appropriately," but she "sh[ook] her leg constantly [throughout] the session." Tr. 525. Plaintiff's mental status exam revealed intact memory, fair insight, full orientation, but "borderline imapair[ment]" with concentration and "poor" judgment. Tr. 525. Mr.

_____

[5] Plaintiff maintains that Mr. Theon "personally evaluated her three times in a 12 month period." Pl.'s Opening Br. 16-17 (citing Tr. 496-97, 502-03, 523-26). The Court acknowledges that, in his July 2012 check-the-box form, Mr. Theon remarked that he "interact[ed]" with plaintiff every "1.5-2 mo[nths]," and the record does contain his periodic chart notes; however, the other two evaluations to which plaintiff refers were performed by Ms. Menczer. See Tr. 497, 503.

Page 16 - OPINION AND ORDER

Theon concluded his report by listing plaintiff's diagnoses (PTSD, OCD, and fibromyalgia) and GAF score (50).[6] Tr. 526.

Additionally, in July 2012, Mr. Theon completed a check-the-box form prepared by plaintiff's attorney. Tr. 556-60. Mr. Theon listed plaintiff's diagnoses as "PTSD, OCD, psychotic disorder NOS." Tr. 556. He checked boxes indicating that plaintiff was markedly restricted in activities of daily living and concentration, persistence, or pace, and extremely restricted in social functioning. Tr. 557. Mr. Theon explained that his opinion regarding the extent of these limitations was based on plaintiff's reports of delusions, paranoia, anxiety, and "difficulty with [activities of daily living]." Id. He stated, as a result, that plaintiff would be expected "to miss 16 hours (the equivalent of two full workdays) or more a month from even simple and routine sedentary jobs." Tr. 560. On an accompanying RFC form, Mr. Theon checked boxes illustrating that plaintiff's conditions would "[p]reclude performance [of numerous workplace functions] for 15% of a 40-hour workweek"; in relevant part, he attested to the existence of memory problems, even with "very short and simple instructions," due to medication side-effects and her underlying diagnosis of psychosis. Tr. 558-59.

---

[6] "A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)," whereas "[a] GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning." Colcord v. Colvin, 2015 WL 589305, *3-5 (D.Or. Feb. 11, 2015) (citing Diagnostic and Statistical Manual of Mental Disorders, 31-34 (4th ed. 2000)).

Page 17 - OPINION AND ORDER

The ALJ gave "little weight" to Mr. Theon's opinion because Dr. Frank "report[ed] she has no side effects from medications" and "[e]vidence does not support" the degree of limitation attested to in light of plaintiff's "car[ing] for her 3 children," having "regularly gone out to gamble in public," and "exhibit[ing] intact concentration, attention[,] cognition," and memory. Tr. 19. In other words, the ALJ concluded that "[t]he assessment of the nurse practitioner appears to be based on [plaintiff's] self-report of symptoms, which is not credible." Id. An inconsistency with the medical record is a germane reason to discount the opinion of a non-acceptable medical source. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Moreover, the ALJ need not accept a medical report that is primarily based on the claimant's statements if those statements have been properly found to be lacking credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

As the ALJ determined, the medical evidence of record contradicts Mr. Theon's opinion. In July 2012, the same month that Mr. Theon completed his check-the-box form, plaintiff reported no medication side-effects to Dr. Frank. Tr. 564. Plaintiff likewise denied medication side-effects in applying for benefits. Tr. 212, 228, 237, 262, 518. Similarly, her chart notes generally do not reflect any reports of such side-effects. See, e.g., Tr. 482, 485, 518; but see Tr. 501 (reporting nausea and dizziness from Abilify, which was discontinued). Furthermore, Dr. Adler found "no signs of cognitive impairments" upon examination. Tr. 377-78. Even Mr. Theon

found plaintiff's memory to be intact and concentration to be only borderline impaired. Tr. 525; see also Tr. 472, 479, 489, 501, 515, 518 (chart notes from Mr. Theon). Mr. Theon is also not qualified to diagnose conditions and plaintiff's conduct, as detailed in section I, expressly contradicts his findings.

In sum, because Mr. Theon's opinion was inconsistent with the other evidence of record, including his own assessments, the ALJ reasonably concluded that his opinion was premised predominantly on plaintiff's un-credible subjective symptom statements. See Tr. 527. The ALJ's decision is upheld in this regard.

### ii. Ms. Menczer's Opinion

The record includes Ms. Menczer's treatment notes from December 2010 through January 2013. Tr. 555, 567. During that time, Ms. Menczer provided counseling to plaintiff every one to two weeks and provided three evaluations, as well as one disability letter. See Tr. 496-97 (January 2012 evaluation), 502-03 (December 2011 evaluation), 579-81 (January 2013 evaluation); see also Tr. 561 (July 2012 disability letter, in which Ms. Menczer opined that plaintiff was "unable to work for even short periods of time" in light of her "mental health instability"). The December 2011 report listed PTSD, obsessive-compulsive disorder, pathological gambling, chronic pain, headaches, and fibromyalgia as diagnoses, and plaintiff's GAF score as 50. Tr. 502. The January 2012 report was substantively identical, except that it included the additional diagnosis of psychotic disorder. Tr. 496. Ms. Menczer's January 2013 report contained the same diagnoses as her January 2012 report

but included a slightly increased GAF score of 51. Tr. 579-80.

The ALJ gave Ms. Menczer's opinion "little weight" because it was "based on [plaintiff's] self-report of symptoms" and inconsistent with plaintiff's activities of daily living. Tr. 21. As noted above, an ALJ may disregard a medical report that is formed upon the claimant's un-credible subjective symptom statements. Tommasetti, 533 F.3d at 1041. An ALJ may also reject a medical opinion that is contrary to the claimant's daily activities. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ's finding relating to Ms. Menczer's opinion is supported by substantial evidence in the record. Evidence submitted by Ms. Menczer does not include reference to any objective medical examinations or findings. Indeed, both Ms. Menczer's chart notes and evaluations are based primarily on plaintiff's self-reporting of symptoms. See, e.g., Tr. 471-555, 567-93. The ALJ's decision is affirmed as to Ms. Menczer's opinion.

    B.   Acceptable Medical Sources

There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss, 427 F.3d at 1216 (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

Page 20 - OPINION AND ORDER

i.   <u>Dr. Adler</u>

In August 2010, Dr. Adler performed a one-time evaluation of plaintiff's mental functioning. Tr. 376-78. Dr. Adler's assessment was based on plaintiff's subjective statements (including that she had recently stopped her medications due to pregnancy), a clinical interview, objective tests, and a review of certain medical records. <u>Id.</u> The doctor diagnosed plaintiff with PTSD, depression, and "[p]anic disorder with agoraphobia." Tr. 378. He also listed "[o]verweight, fibromyalgia" as contributing factors. <u>Id.</u> Although Dr. Adler opined that plaintiff exhibited "no signs of cognitive impairments (ex: memory, concentration, calculation, verbal skills)" and was socially appropriate, he nonetheless reported that her "depression, and predominantly, constant anxiety . . . appeared very significant and to pose impairments in functioning now." <u>Id.</u>

The ALJ gave Dr. Adler's evaluation "some weight." Tr. 18. Specifically, the ALJ found that Dr. Adler's opinion did "not suggest difficulties with routine tasks and limited interaction." <u>Id.</u> To the extent the ALJ rejected this opinion, he did so because it was contravened by plaintiff's daily conduct. Tr. 18-19. Initially, an ALJ need not accept a medical opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). In addition, as referenced above, an ALJ may reject a medical opinion that is inconsistent with the claimant's activities of daily living. <u>Rollins</u>, 261 F.3d at 856.

Page 21 - OPINION AND ORDER

A review of Dr. Adler's report confirms the absence of any named mental or physical limitations, such as the inability to attend work on a sustained basis or stoop, bend, or crawl. Although Dr. Adler refers broadly to "impairments in functioning," his report offers a specific opinion only as to plaintiff's underlying conditions. Further, as the ALJ reasonably concluded, plaintiff's daily activities are inconsistent with Dr. Adler's opinion as to plaintiff's "very significant" anxiety associated with leaving the home. The ALJ provided legally sufficient reasons, supported by substantial evidence, for affording less weight to the opinion of Dr. Adler.

   ii.  <u>Dr. Frank</u>

In July 2012, Dr. Frank completed a check-the-box form prepared by plaintiff's attorney. Tr. 562-65. As noted above, Dr. Frank expressly stated that information provided on this form was based on "a conversation with Ms. Peck," as opposed to his own independent medical judgment, in light of their newly-established treatment relationship. Tr. 565. The doctor checked boxes reflecting that plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry ten pounds, stand/walk or sit for 30 minutes at one time and for a total of four hours in an eight hour workday, and never climb, stoop, bend, kneel, crouch, crawl, push, or pull. Tr. 563-64. He also endorsed marked restrictions in social functioning and concentration, persistence, or pace. <u>Id.</u> Finally, when asked to "estimate the percentage of a standard workweek [that plaintiff's] attention and concentration would be

Page 22 - OPINION AND ORDER

impaired to such a degree that she could not be expected to perform even simple work tasks," Dr. Frank responded: "Ms. Peck feels this would be 3-4 days/week missed [although] I suspect that work might have some benefit to her mental health." Tr. 565.

The ALJ afforded "little weight" to Dr. Frank's opinion because the "limitations described are not supported by the treatment record or [plaintiff's] daily activities" and "are based on [plaintiff's] self-report of symptoms." Tr. 21. As addressed herein, an ALJ may afford less weight to a treating physician's opinion that is inconsistent with the claimant's activities of daily living or based on the claimant's incredible subjective symptoms statements. Rollins, 261 F.3d at 856; Tommasetti, 533 F.3d at 1041.

Here, Dr. Frank made clear that his check-the-box assessment was premised on plaintiff's un-credible self-reports. Indeed, although his chart notes are not in the record before the Court, there is no indication that he independently examined plaintiff prior to rendering his opinion or reviewed her longitudinal medical history. Furthermore, plaintiff's daily activities, as well as the other medical evidence of record, contravene Dr. Frank's remarks regarding plaintiff's marked impairments in social functioning and concentration, persistence, or pace. The ALJ's assessment of the medical evidence is upheld.

IV.   RFC Assessment

Plaintiff also asserts that the ALJ's RFC is inadequate because it failed to account for her: (1) moderate impairment in

concentration, persistence, or pace; (2) inability to engage in more than occasional contact with coworkers; and (3) back condition, especially in conjunction with her obesity.[7]

The RFC is the maximum a claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of the claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

A.    Concentration, Persistence, or Pace

"It is well-established in this District that the term 'moderate' does not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment."[8] Brink v. Astrue, 2013 WL 1785803, *5 (D.Or. Apr. 24, 2013) (collecting cases). This is because "the term 'moderate' does not inherently

---

[7] For the first time in her reply brief, plaintiff also contends that the ALJ erred in relation to the RFC by failing to include a limitation to account for panic attacks. See Pl.'s Reply Br. 13. Aside from the fact that the Court need not consider arguments first raised in a reply brief, plaintiff devoted one sentence to this alleged error and does not provide any argument or evidence in support, such that the Court declines to address it further.

[8] The parties have not cited to, and the Court is not aware of, any published Ninth Circuit precedent that addresses this precise issue.

Page 24 - OPINION AND ORDER

translate to a concrete functional limitation." Id. (citations omitted). The mild, moderate, or severe limitations, in the broad categories of activities of daily living, social functioning, and concentration, persistence, or pace, that are evaluated at steps two and three "are not an RFC assessment." SSR 96-8p, available at 1996 WL 374184; Tr. 16. Rather, "the RFC assessment adequately captures restrictions in broad functional areas if it is consistent with the concrete limitations in the medical opinions." Rogers v. Comm'r of Soc. Sec. Admin., 490 Fed.Appx. 15, 17-18 (9th Cir. 2012); SSR 96-8p, available at 1996 WL 374184.

In other words, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

As addressed in section III, the ALJ properly evaluated the opinions of Dr. Frank, Dr. Adler, Ms. Menczer, and Mr. Theon. The only other medical opinion evidence relating to plaintiff's impairment in concentration, persistence, or pace is from state agency consulting sources Megan Nicoloff, Psy.D., and Dorothy Anderson, Ph.D. Tr. 53-55, 64-66, 92. Although Drs. Nicoloff and Anderson assessed moderate limitations in this category in August 2010 and January 2011, respectively, they nonetheless opined that plaintiff was capable of performing "simple and routine tasks" on a sustained basis. Tr. 55, 66, 92. Furthermore, plaintiff's daily activities implicate the mental ability to perform work consistent

with the RFC. The ALJ did not err in translating plaintiff's impairment in concentration, persistence, or pace into a concrete functional limitation in the RFC.

B.   Coworker Interaction

The evidence of record supports the ALJ's non-exertional limitation regarding social functioning. Notably, plaintiff reported that she had never "been fired or laid off from a job because of problems getting along with other people." Tr. 211. Similarly, she remarked that she "get[s] along with authority figures . . . good." Id. As referenced in section I, the record reveals that plaintiff socializes with friends and family, lived with her boyfriend during the adjudication period, and attended individual and group counseling. In addition, Drs. Nicoloff and Anderson commented that plaintiff "can work at jobs [with] no public contact and only occ[asional] coworker contact." Tr. 53-55, 64-66, 93. In light of this evidence, the ALJ concluded that plaintiff is capable of work "requir[ing] no interaction with the public and only superficial interaction with co-workers but no close cooperation or coordination." Tr. 17. The ALJ reasonably translated plaintiff's impairment in social functioning into a concrete functional limitation in the RFC.

Even accepting plaintiff's argument that the ALJ's "RFC findings are legally deficient, as they omit limitations on the frequency of interaction of co-workers," such an error was harmless. Pl.'s Opening Br. 29 (emphasis removed); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)

Page 26 - OPINION AND ORDER

(mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The Dictionary of Occupational Titles and Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (collectively the "DOT") explain that social interaction is "not significant" in the unskilled jobs identified by the VE. Tr. 45; DOT § 381.687-018, available at 1991 WL 673258; DOT § 323.687-014, available at 1991 WL 672783. The ALJ's RFC is upheld in this regard.

    C.   <u>Back Impairment</u>

As addressed in section II(C), the ALJ erred by failing to find that plaintiff's disc disease met the durational requirement for a medically determinable, severe impairment at step two. Moreover, the record before the Court contains ample evidence demonstrating that plaintiff was obese. <u>See, e.g.</u>, Tr. 197, 378, 438-40, 448; <u>see also</u> Tr. 13-23. There is also evidence that plaintiff's back condition was exacerbated by her weight. <u>See, e.g.</u>, Tr. 439. Yet there is no indication that the ALJ evaluated plaintiff's disc disease or obesity, either singly or in combination, in formulating her RFC. <u>See</u> Tr. 17-21 (finding that plaintiff was capable of performing "a full range of work at all exertional levels"). This error was harmful, especially given that the jobs identified by the VE entail significant standing, walking, lifting, carrying, bending, etc. Tr. 45; DOT § 381.687-018, <u>available at</u> 1991 WL 673258; DOT § 323.687-014, <u>available at</u> 1991 WL 672783). Reversal is therefore required as to this issue.

Page 27 - OPINION AND ORDER

V.   VE Testimony

In addition to asserting that the ALJ's step four and five findings were invalid because they were based on an incomplete RFC, plaintiff contends that the VE's testimony was inconsistent with the DOT. Specifically, plaintiff argues that the representative occupations identified by the VE entail "noise inducing" activities in contravention of the ALJ's RFC limitation that "she should avoid concentrated exposure to noise." Pl.'s Opening Br. 32-33.

The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Id. In accordance with Social Security Ruling 00-4p, the ALJ must ask the VE if his or her testimony is consistent with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir.2007). If there is no conflict between the VE's testimony and the DOT, "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts," the ALJ's step five finding must be upheld. Id. at 1153-54; SSR 00-4p, available at 2000 WL 1898704.

The dispositive hypothetical question posed to the VE included a work limitation involving no "concentrated exposure to noise, or noisy environments." Tr. 45. The VE, in turn, identified the representative occupations of industrial cleaner and hotel cleaner, which involve no more than "moderate" noise; in addition, the

Page 28 - OPINION AND ORDER

ability to hear is "[n]ot present." <u>Id.</u>; DOT § 381.687-018, <u>available at</u> 1991 WL 673258; DOT § 323.687-014, <u>available at</u> 1991 WL 672783. The ALJ then confirmed that the VE's statements were consistent with the DOT. Plaintiff's attorney did not challenge the VE's testimony despite being afforded an opportunity to do so. Tr. 45-46. No conflict exists between the VE's testimony and the DOT.

VI.   <u>Remand</u>

The decision "whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." <u>Stone v. Heckler</u>, 761 F.2d 530, 533 (9th Cir. 1985). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. <u>Strauss v. Comm'r of Soc. Sec. Admin.</u>, 635 F.3d 1135, 1138 (9th Cir. 2011) (citation omitted). The court, however, may not award benefits "unless the claimant is, in fact, disabled." <u>Strauss</u>, 635 F.3d at 1138 (citation omitted). Conversely, a remand for further proceedings is proper where outstanding issues remain unresolved. <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Further administrative proceedings are warranted here because the Court is unable to make a disability determination based on the existing record. The credit-as-true doctrine is unavailing because the ALJ properly rejected plaintiff's testimony, as well as the medical opinions of Mr. Theon, Ms. Menczer, Dr. Frank, and Dr. Adler. Ambiguity also exists regarding the extent of plaintiff's

Page 29 - OPINION AND ORDER

back impairment, as the record does not contain any recent medical records relating thereto. Therefore, on remand, the ALJ must reassess plaintiff's alleged impairments and reevaluate the medical evidence. If necessary, the ALJ must then reformulate the RFC and perform the subsequent steps of the sequential evaluation process.

**CONCLUSION**

The Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this _____ day of March 2015.

_____
Ann Aiken
United States District Judge

Page 30 - OPINION AND ORDER